# NEW YORK SUPERIOR COURT.

### The New York Ice Company, respondent agt. Ransom Parker, appellant.

*Proof* of the admission of the correctness of a bill of goods by the vendee, and no dispute on the trial as to the amount, is proof of the *sale and delivery* of the goods.

A claim against *all* the persons who compose a corporation, jointly, cannot be pleaded as a set-off, as against a claim made by the corporation as such.

The plaintiffs agreed to furnish ice to defendant for one year; the plaintiffs, a corporation, established a rule that their customers should not sell ice bought of them less than a certain price, and established a board to hear complaints against persons violating the rule. The defendant broke it; was tried before the board; found guilty, and, as a punishment, his supply of ice was stopped for three days, to his great injury.

*Held* that this rule having been known to the defendant when he was making his contract, he could not maintain a claim against the company for damages occasioned by the plaintiffs' ceasing to supply him with ice.

*General Term, June,* 1861.

*Before* Bosworth, Ch. J., Hoffman *and* Woodruff, *Justices.*

This was an appeal from an order denying a motion for a new trial, and from a judgment entered in favor of the plaintiffs, for the sum of $5,215.50 damages, interest and costs. The cause was tried before Justice Robertson and a jury. Under the charge of the court a verdict was rendered for the plaintiffs. The complaint set forth that the plaintiffs are a corporation for dealing in ice in the city of New York and elsewhere; that the defendant had been in the habit of purchasing ice from them; that at different times between the 24th day of July, 1858, and the 1st day of January, 1859, he had bought and had delivered to him, in the aggregate from them, ice to the value of $4,507.55, and that he was still indebted to the plaintiffs in that amount, as he has admitted. The defendant in his answer admitted that he had purchased quantities of ice from the plaintiffs, but denied that the amounts and sums mentioned are correct, and put the plaintiffs to prove the same. The defendant also set up as a distinct defence, and by way of

counterclaim: 1st. That in the fall of 1856 he was a member of a partnership or association in the city of New York, existing under the laws of the state, by the name of " The Independent Ice Company;" that by the by-laws of said company no member shall sell out his interest in it either without the consent of the shareholders, each and every of them, or without purchasing the interest of such members as would dissent from his doing so; that while said by-laws were in force all the members of the Independent Ice Company, except the defendant and one other person, sold their shares in the same to the New York Ice Company, without the consent and in spite of the protest of the defendant against the proceeding; that the members of the New York Ice Company were formerly members of the Independent Ice Company, and are now plaintiffs in this action; that at the time of the said sale of the Independent Ice Company's stock the defendant held of it $21,802.50, and that amount was the market value of it; that by reason of said sale the stock became worthless; that no stock of the plaintiffs' company had ever been issued to him (the defendant) in lieu of the stock held by him of the Independent Ice Company; but that stock of the New York Ice Company had been issued to every member of the Independent Ice Company, except the defendant; and that the stock of the plaintiffs' company is not worth near as much as the stock of the Independent Ice Company was at the time of said unauthorized sale. 2d. As another defence, (the 3d one in the complaint) the defendant alleged that the said sale having been effected, and the plaintiffs having constituted themselves a company from the Independent Ice Company, and in the manner aforesaid, commenced doing business; that the defendant's business being to buy ice at wholesale, and to sell the same at retail, he, in the summer of 1857, in order to fulfil the contracts he had made with his customers, found it necessary to purchase ice of the plaintiff's company; that they contracted and

agreed to sell to him, on credit, all the ice he would require for the purpose aforesaid; that in violation of their said contract, on the 12th day of May, 1858, they refused for three days to supply him with ice; that he, the defendant, for that reason failed to supply his customers with ice; that reports as to said failure injurious to his business were spread about; that, consequently, many of his customers refused to be supplied thereafter with ice by him; and that, by reason of said reports, and the refusal of the said plaintiffs to perform their contract, he had suffered damage to the amount of $10,000. 3d. As another defence, that in the month of January, 1857, he was employed by the plaintiffs' company, and rendered services to them, the value and expense of which were $174.38, and, therefore, that he demanded judgment for $3,600.

The plaintiffs, by their reply, put in issue all the allegations of the answer in relation to ceasing for the three days to supply him with ice. They alleged, that prior to the 12th day of June, (May) 1858, the defendant had agreed with the plaintiffs' company that he would not sell ice to a certain class of persons known to be customers of other ice dealers; nor to sell ice to any one at an under price; that the defendant violated said agreement in both particulars, and did so after he had received notice from one of the plaintiffs to refrain, or that the company would sell him no more ice. The plaintiffs admitted that they employed the defendant to do some work at New Rochelle, but denied that the work done was worth the sum claimed ($176.38.) The jury, under the charge of the court, rendered a verdict for the plaintiffs for $4,895.96. No exceptions were taken to the charge; nor is it set forth in the case; the exceptions on which the case comes from below arise upon the rulings of the court during the course of the trial.

ANDREWS, COLBY & THOMPSON, *for appellants,*

argued the following exceptions taken:

1st. To the ruling of the court in excluding all evidence in regard to the counterclaim set forth in the second allegation in the answer, on the ground that a counterclaim could be set up on a claim for unliquidated damages arising on a contract different from that on which the action was brought. (4 *E. D. Smith*, 285; *Code*, § 150, *and case of Merrill* agt. *Salmons*.)

2d. To the exclusion of evidence going to show the damage occasioned to the defendant by the stoppage of his supply of ice; the effect of it; and the preceding mentioned ruling having been to wholly deprive the defendant of the benefit of the counterclaim set forth in the third subdivision of his answer, as well as to deprive him of the benefit of the first and second counterclaims, which latter, it is argued, arose out of the same contract as that for which the action was brought, and is a proper subject for a counterclaim (*Mayor, &c.,* agt. *Malie*, 3 *Kern.*, 161; *La Farge* agt. *Halsey*, 1 *Bos.*, 171;) and it was further maintained that the plaintiffs admitted the defendant's right to present his claim in form of a counterclaim, by replying to it.

3d. To the admission of a witness' testimony made from and based on non-original entries in plaintiffs' ledger. Various other points were taken by the counsel for the defence, which need not be here cited, as they are referred to particularly, and at length, in the decision of the court.

Mr. MERRILL, *for respondents.*

By the court, HOFFMAN, Justice. I. The counsel for the defendant moved to dismiss the complaint on the ground that the plaintiffs had not proved the sale and delivery of the ice; the motion was denied and an exception taken. The plaintiffs had proved that the defendant had called, and had gone over the figures of the bills, with the secretary of the company, and had admitted them to be, in the main, correct; the sum total of the balance was $4,507,

and some cents.   He stated that there was no objection to the bill ; this was in September, 1858.   Before the arbitrators, also, there was no dispute as to the amount of the bill.   This exception is clearly untenable.

II.  The plaintiffs' counsel objected to any evidence in regard to the first counterclaim, which is set forth in the second allegation of the answer.   The court sustained the objection, and the defendant's counsel excepted to the ruling of the court.   Whatever cause of action could by possibility have arisen to the defendant, upon the facts stated in this counterclaim, would arise against his associates in the former company, or partnership, as individuals, and upon a breach of their contract with him.   This took place in the fall of 1856.   In another part of his answer he states that the plaintiffs contracted to sell ice to him, to enable him to perform his engagements, involving thereby the admission that he contracted with them to purchase ice.   Thus the case is one of an alleged demand, against several individuals, formerly partners with the defendant, offered to be applied in extinction of a demand by a corporation with which he has dealt, because some, or most of the corporators, were members of the former association.   The learned judge was clearly right in his ruling upon this point.   (*Peabody* agt. *Bloomer*, 3 *Abb. R.*, 353.)

The rulings connected with the third clause of the answer, being the second counterclaim, gave rise to the most of the defendant's exceptions.   Upon the examination of Mr. Thorp, president of the company, he was asked by the defendant's counsel if the company had stopped the delivery of ice to Parker at one time, and was answered they had ; and was again asked by the same counsel why he stopped delivering ice to Parker.   The witness replied that an explanation was necessary ; that there was a custom of the trade by which " we " agreed to sell at certain prices.   The counsel of the defendant objected to testimony on the subject of customs of the trade ; the court overruled the objec-

tion, and directed the witness to give the proposed expla-
nation; and the counsel for the defendant excepted to it.
The witness stated that Parker, with others, had agreed to
sell at certain prices, and upon failing to do so there was
a certain penalty. Parker broke the agreement, and the
penalty was the cutting off of his supply of ice. There
was a board to try such cases, and Parker appeared at the
board. The evidence elicited by the defendant's own ques-
tion is, therefore, in substance, that Parker had entered
into an agreement which he had violated, and this justified
the stoppage of the ice; that there was a board or body
constituted to inquire into such matters, and he recognized
it. In truth, there is nothing of evidence as to custom
proper stated by the witness. So in regard to the excep-
tion as to the terms of the arrangement between the dealers
having been made known to Parker, and of a committee
trying causes of a breach of such arrangement, and other
exceptions of a similar nature. Parker entered into the
arrangement, became a party to the conditions, and brought
a complaint himself. By an express contract he submitted
not only to the conditions, but to the mode of ascertaining
the violation of them. All testimony, therefore, under this
head, was rightly admitted. Other exceptions go to the
refusal of the judge to admit questions as to how many
wagons the defendant was employing in his business when
the ice was stopped; to what contracts he then had for
the delivery of ice; what was the effect upon his business
generally, and as to his loss of customers. Testimony as
to the amount of ice he received from day to day from the
company, and testimony as to the retail price at which he
sold it to his customers were admitted.

There is one general view which renders the considera-
tion of these several exceptions in detail unnecessary.
There was no evidence sufficient to justify a finding that
the defendant knew of, and agreed to be bound by the

rules as to encroaching upon other seller's rights, and as to underselling, and that he had violated them.    The issue was raised in the reply.    We are to assume that the judge charged properly as to all the points in issue; hence that this was submitted to the jury to answer; and we think the verdict has answered that the plaintiffs were warranted in stopping the ice, because we think that no allowance has been made to the defendant on account of this counter-claim.

The verdict was for the sum of $4,895.96; the balance adjusted and proven as of the first day of January, 1859, was $4,507.55; the interest to the tenth day of November, as deposed to, was $584.36, making an aggregate of $5,093.89. There is an error in the figures as to the interest, probably, which, however, is of no importance.    It is not beyond a doubt that the amount claimed for services and disburse-ments at New Rochelle, by the defendant, was allowed; the reply admits the services, contesting the value only; the claim was proven at $173.50; in the answer it is stated at $174.38.    If the jury deduct this $174.38 from the prin-cipal of the plaintiff's demand, $4,507.55, and computed interest on the balance from January 1st, 1859, to the 10th day of November, 1860, the sum will differ, by my compu-tation from the verdict, by a sum less than two dollars of excess, being $4,897.50.    The counsel of the plaintiffs states in his points, that this counterclaim was allowed in the computation, and we think this was the case.    The jury, then, could not have allowed anything for the counter-claim, arising from the stoppage of the ice; and if so, must have rejected it, because the demand was not established. It is to be regretted that the case has not so much of the charge of the judge, as to these points, as would have re-moved all ambiguity from them.

Another and remaining exception to be noticed relates to the reference made by the witness to the ledger.    It was

only to refresh, by his own entries, his memory as to the aggregate amount of the ice furnished; the amount or balance which he thus ascertained was stated to the defendant; the accounts were shown him, and the sum admitted to be due. The exception cannot be sustained.

The judgment must be affirmed, with costs.