WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURRO-
GATE.—March, 1879.

WRIGHT *v.* WRIGHT..

*In the matter of the accounting of* GEORGE S. WRIGHT, *administrator, &c., of* JOHN T. WRIGHT, *deceased.*

The administrator, upon his accounting, claimed to be joint owner of a steamer with the intestate, his father, and that the latter was indebted to him in a large sum for half her net earnings. The evidence showed that the deceased proposed to buy the ship on joint account, and afterwards, by written and oral declarations made from time to time, admitted that his son, the administrator, was a part owner of the vessel. For nearly two years prior to his death a silence on the subject prevailed. The son at no time, either before or after his father's death,

claimed any part of the earnings as his own, until he filed his verified accounts as administrator. He frequently admitted, both orally and in writing, that the whole of these earnings belonged to the estate, and strengthened this admission by making payments, as administrator, to the next-of-kin, in accord therewith. *Held,* that the claim of the administrator must be rejected.

While oral admissions constitute a dangerous species of evidence, still, when clearly and unmistakably established, they become most satisfactory.

While ownership of property in a person is presumed to continue until a change of title shall be proven, such a change may be established as well by an admission by the owner, as by a contract.

An admission or declaration, having reference to a precedent condition of things, is also an admission of all intervening facts essential to the truth of such admission.

IN December, 1872, the administrator took initiatory steps for the rendering and settlement of his accounts. The account was filed in January, 1873, and subsequently objections thereto were filed. Among other things, the administrator claimed that he was joint owner with the intestate of the steamer *Daniel Webster*, and that the deceased owed him about $200,000 for the half of her net earnings. The sum so claimed amounted to or exceeded the whole assets left by the deceased. In July, 1873, the administrator commenced the introduction of testimony to establish his claim, which became the chief subject of contention. In 1877, the case was finally determined, and the claim disallowed. Some other questions, of comparatively small importance, were also disposed of. An appeal was taken by the administrator from the Surrogate's decree to the General Term of the Supreme Court, by which the decree, so far as the *Webster* claim was concerned, was affirmed. The administrator then appealed to the Court of Appeals, where so much of the judgment of the Supreme Court and the decree of the Surrogate, as charged the administrator

with a sum of several thousands of dollars for premiums on United States bonds, was reversed, and a re-hearing was ordered before the Surrogate. The decision in regard to the *Webster* claim was neither affirmed nor reversed. On the re-hearing, both parties presented additional evidence, chiefly relating to the administrator's claim.

JAMES THOMSON, *for administrator.*

ALEX. THAIN, *for contestants.*

THE SURROGATE.—When this question was first decided (16 *Abb. Pr.*, *N. S.*, 429), it was done without the knowledge of any payments having been made by the administrator to the next-of-kin on account of their distributive shares. On the case being reopened in order to permit the administrator to prove such payments as he did, to the extent of upwards of $114,000, the allegation and proof of which had been theretofore suppressed, a new element, strengthening very materially the justice of the conclusion already reached, was added to the case.

The evidence offered on the part of the administrator, on the rehearing, is almost entirely of the same character as that given on the previous hearing, consisting chiefly of casual declarations of the deceased as to his son being interested in the vessel. Some evidence was also offered with the view to weaken the effect of the administrator's exhibit " K." I must confess my inability to discover, under the circumstances, how its force as an admission is at all shaken.

Much stress has been laid, here and elsewhere, upon the division of earnings made by decedent on his book

in 1863.   Of course, that is relied upon as an admission made by him, but it was never communicated to George S. Wright,   If, however, it can be regarded as a declaration of the father, then, it seems to me, that the same book, showing as it does that after that period he regarded the ship as wholly his, recalls and neutralizes the effect of the admission.   Certainly no such division was ever thereafter made.   The evidence, so far, therefore, as the book is concerned, would indicate an intention, at first, to share the vessel and its earnings with George, which was subsequently changed.   This view is confirmed by the facts that there is no evidence of a claim made by George to any share of the earnings during his father's life-time ; that he paid his father large sums of money during the period, which he admitted he owed to him ; and that they had frequent settlements of the accounts between them, from the time of the purchase of the *Webster* to decedent's death, in which no account relating to the earnings was ever considered, although the son was allowed and paid, by the deceased, moneys which he had disbursed on account of the ship.

In so far as this claim is concerned, the facts affecting it may be thus briefly summarized.   The deceased, at first, proposed to buy the ship on joint account, and afterwards, by written and oral declarations, made from time to time, admitted that his son was a part owner of the vessel.   For nearly two years before his death a silence on the subject prevailed.   There is no evidence that the son, at any time, either before or after the death of his father, laid claim to any part of the earnings as his own, until he filed his verified account, if, under the circumstances, even that can justly be considered such.   In

1869, and in each succeeding year thereafter, to and including 1873, he, orally and in writing, admitted that the whole of these earnings belonged to the estate. He strengthened his admission by making payments as administrator, to next-of-kin as such, in accord therewith.

The proof of oral admissions is generally regarded as a dangerous species of evidence, to be received with great caution, because of the fallibility of the faculty of memory of those who may testify to them ; but when they are clearly and unmistakably established, they become most satisfactory. (*Cow. & Hill's Notes*, 210, 211 ; 1 *Greenl. Ev.*, § 200.) Here we have the claimant's written admissions, about which there can be no doubt as to the language used.

It was hardly necessary to cite authorities to show that when ownership of property in a person has been once established, it is presumed to continue until a change shall be proven. That is an elementary principle. But there is no fixed rule of evidence as to how a change of ownership must be established. It may be done as well by proving a bare admission, as by proof of a contract of sale or exchange, or a gift. Thus, if A. and B. are shown to have been joint owners of a horse, and an admission of B., subsequently made, that A. is the sole owner, shall be established, it will divest B. of any interest in the animal, although it is not made to appear precisely how the change of ownership was effected. His admission presupposes everything necessary to a change of title, to wit : that they were joint owners, that he has sold his interest to A., or given it to him, or in some other legal manner divested himself of it, and conferred it on A. This seems to me to be a fit illustration of this

case.  Payment of money is an admission against the payer that the receiver is the proper person to receive it. (*Greenl. Ev.*, 196.)  The indorsement of a promissory note is a conclusive admission of the genuineness of the preceding signatures as well as of the authority of the agent, in cases of procuration, and of the capacity of the parties.  (*Ib.*, § 207.)  The admission of the correctness of an account for goods sold is an admission of the sale and delivery.  (N. Y. Ice Co. *v.* Parker, 21 *How. Pr.*, 302.)  So that an admission or declaration, having reference to a precedent condition of things, is also an admission of all intervening facts essential to its truth.  Additional force should attach to such a rule, where the admission or declaration is made by a living person affecting a transaction with one who is dead.

When the administrator, after the death of his father, spoke at all of the earnings of the steamer, he did not speak of them or any part of them as really belonging to him ; but he gave, as the sole reason, and in the nature of an apology for interposing such claim, a scheme to shield the estate against the claims of Mrs. Campbell and her children, who asserted themselves to be the decedent's widow and some of his next-of-kin, and who were then endeavoring to establish their legal rights as such.  Clearly the announcement of that scheme in no way detracts from the force of his admissions that all the earnings belonged to the estate ; indeed, he virtually repeated, in that connection, the same admission.  The burden was upon the administrator to show that he made no such admissions, or if he did, that they were erroneous.  This he has utterly failed to do.  True, he attempts to contradict several witnesses who testified to his oral

admissions on the subject, but when it is seen that they precisely agreed with his prior uncontradicted written admissions, and that those witnesses were entirely disinterested, while his interest was very great, his testimony must be deemed to be overborne by theirs. I have elsewhere had occasion to express my doubts as to the credibility of the claimant as a witness, in which I find a justification in the case of Stilwell *v.* Carpenter. (2 *Abb. New Cas.*, 238, 257.)

In view of the facts that down to the time of the death of the intestate the claimant had never asserted this claim, and that from that period to December, 1873, while this litigation was progressing, so far from any announcement of it being made to any one, there was a continuous and unbroken series of admissions that all of the assets belonged to the next-of-kin, the conclusion that it must be rejected seems irresistible.

I see no reasons given in my former opinion for the rejection of the claim which are not, on a careful re-consideration, fully confirmed and strengthened by subsequent facts.

In regard to the ground of reversal by the Court of Appeals (71 *N. Y.*, 612), relating to the charge for increased value of United States bonds, the question was not discussed or considered by this court, any further than to direct a calculation to be made of the same, in accordance with a stipulation between the parties on the subject. Simple interest only should be allowed against the administrator, in accordance with the rule established in the case of Garniss *v.* Gardiner (1 *Edw. Ch.*, 128).

Let a decree be prepared accordingly, having regard

to releases executed, and all matters in any way determined, and presented for settlement on notice.

Costs of the rehearing are granted to the contestants against the administrator personally. The costs of the original hearing to remain as fixed by the decree then entered.